UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON R. TERHUNE,<br><br>Plaintiff,<br><br>v.<br><br>JOE LIZARRAGA, et al.,<br><br>Defendants. | No. 2:15-cv-1738 TLN DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant, Dr. Pace, was deliberately indifferent to his medical needs in violation of the Eighth Amendment and retaliated against him in violation of the First Amendment. Presently before the court is defendant's motion for summary judgment. (ECF No. 32.) For the reasons set forth below, the court will recommend that defendant's motion be granted in part and denied in part .

**BACKGROUND**

I. **Plaintiff's Complaint**

Plaintiff's complaint contains the following allegations. (ECF No. 1.) Plaintiff was injured at work on May 14, 2015, exacerbating an existing genetic condition and old injuries. Plaintiff was treated immediately following the incident, but was not seen by a doctor for a follow-up visit thereafter. Plaintiff filed numerous requests and used the prison grievance system

to try and receive an appointment with his Primary Care Provider ("PCP"), defendant Dr. Pace.

Plaintiff claims several of his appointments were cancelled by defendant, who left early when plaintiff had a ducat for an appointment with him, and his Tylenol #3 prescription was cut off after he started using the administrative grievance system. Plaintiff alleges he was denied treatment based on his extensive mental health history.

**II. Procedural Background**

Plaintiff filed the complaint in August 2015. (ECF No. 1.) The magistrate judge then assigned to the case screened the complaint, ordered service appropriate for defendant Dr. Pace, and dismissed the remaining defendants. (ECF No. 5.) After the close of discovery defendant filed the instant motion for summary judgment (ECF No. 32) and plaintiff responded (ECF No. 34).

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In support of his summary judgment motion defendant argues he had no control over the schedule that caused the six-week delay[1] in plaintiff's treatment, he did not know plaintiff filed an administrative grievance against him when he decided not to renew plaintiff's prescription, plaintiff has failed to allege facts showing the adverse action chilled the exercise of plaintiff's First Amendment rights, and he is entitled to qualified immunity.

**PLAINTIFF'S RESPONSE**

In his response, plaintiff argues defendant could have taken further actions to ensure plaintiff was treated. Plaintiff claims defendant could have sent plaintiff a priority ducat, had him paged directly, or refrained from leaving early, and thus effectively cancelling plaintiff's appointments. Plaintiff claims defendant extended his Tylenol #3 prescription several times without examining him, but suddenly cut off the prescription on June 4, 2015, three days after plaintiff filed a grievance complaining about defendant's failure to treat him. Plaintiff alleges the proximity in time between these two events shows that defendant refused to renew the

---

[1] Defendant's Memorandum of Points and Authorities in support of the motion for summary judgment (ECF No. 32-1) references both a six-week delay and a six-month delay. The court assumes references to a six-month delay are due to typographical error.

prescription in retaliation for plaintiff filing a grievance. He further alleges that he was not seen for a medical appointment on June 25, 2015, but instead he and defendant discussed the grievance complaining about defendant's failure to treat him following the fall.

Plaintiff's opposition to defendant's motion for summary judgment consists of plaintiff's response to defendant's statement of undisputed facts and a single exhibit containing two examples of a priority ducat.

While "[p]ro se litigants must follow the same rules of procedure that govern other litigants," King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc), it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curium). The unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 &n.4 (9th Cir. 1986) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. at 1364 n.4 (citation omitted).

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

## LEGAL STANDARDS

**I.      Summary Judgment Standards under Rule 56**

Summary Judgment is appropriate when the moving party "shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

1 | Civ. P. 56(a). Under summary judgment practice, "[t]he moving party "initially bears the burden
2 | of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation,
3 | 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).
4 | The moving party may accomplish this by "citing to particular parts of the materials in the record,
5 | including depositions, documents, electronically stored information, affidavits or declarations,
6 | stipulations (including those made for purposes of the motion only), admissions, interrogatory
7 | answers, or other materials" or by showing that such materials "do not establish the absence or
8 | presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
9 | support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

4

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citing Guidroz—Brault v. Mo. Pac. R.R. Co., 254 F.3d 825, 829 (9th Cir. 2001)). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

**II.     Deliberate Indifference in Violation of the Eighth Amendment**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

////

If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

"Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez v. Smith, 203 F.3d 1122, 1131 (quoting McGuckin, 974 F.2d at 1059-60). By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchison v. United States, 838 F.2d 390, 394 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been violated with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is a "state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for

////

6

the prisoner's interest or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, 974 F.2d at 1060).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### III. Retaliation in Violation of the First Amendment

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).

Under the first element, plaintiff need not prove that the alleged retaliatory action, it itself, violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[P]risoners may still base retaliation claims on harms that would not raise due process concerns."); Rizzo v. Dawson, 778

F.2d 527, 531 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). The interest cognizable in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive. However, not every allegedly adverse action is sufficient to support a claim for retaliation under § 1983. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (harm must be "more than minimal"); see also Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002) ("[S]ome adverse actions are so de minimus that they do not give rise to constitutionally cognizable injuries.").

To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Plaintiff must prove direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. See McCollum v. Cal. Dep't of Corr. and Rehab., 647 F.3d 870, 882-83 (9th Cir. 2011); accord Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. McCollum, 647 F.3d at 882 (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)).

The third element includes prisoners' First Amendment right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). While prisoners have no freestanding right to a prison grievance process, Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567.

////

Under the fourth element, plaintiff need not demonstrate a "*total* chilling of his First Amendment rights," only that defendant's challenged conduct "would chill or silence a person of ordinary firmness from future First Amendment activities." Id. at 568-69 (emphasis in original, citation and internal quotation marks omitted). Moreover, direct and tangible harm will support a retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Id. at 567 n.11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. Brodheim, 584 F.3d at 1269 (citing Rhodes, 408 F.3d at 568 n.11).

Regarding the fifth element, the Ninth Circuit has held that preserving institutional order, discipline, and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (citing Rizzo, 778 F.2d at 532). When considering this final factor, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for defendant's challenged conduct. Id. at 806.

**IV.     Qualified Immunity**

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Sauceir v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al—Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately

indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting Ashcroft v. al—Kidd, 563 U.S. at 741 (some internal marks omitted)). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[D]etermining whether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al—Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

**MATERIAL FACTS**

**I.  Undisputed Facts**

At all relevant times plaintiff was an inmate incarcerated at Mule Creek State Prison ("MCSP"). At all relevant times defendant was employed as a medical doctor whose primary duty was to provide medical care and treatment to inmates at MCSP. (Defendant's Statement of Undisputed Facts ("DSUF") (ECF No. 32-2) ¶ 2; Plaintiff's Response ("Pl's Resp.") (ECF No. 34) at 1.) Defendant was plaintiff's assigned primary care provider ("PCP") while plaintiff was housed at MCSP. (DSUF (ECF No. 32-2) ¶ 5; Pl's Resp. (ECF No. 34) at 6.)

Plaintiff was injured in a fall at work on May 14, 2015. (DSUF (ECF No. 32-2) ¶ 3; Pl's Resp. (ECF No. 34) at 1.) After the fall, plaintiff filed numerous health care services request forms requesting to see defendant, his PCP, and requests to renew his Tylenol #3 prescription. (DSUF (ECF No. 32-2) ¶ 3; Pl's Resp. (ECF No. 34) at 4, 6, 7, 8.) Plaintiff was prescribed Tylenol #3 from May 14, 2015 to June 4, 2015, approximately three weeks. (DSUF (ECF No. 32-2) ¶ 9; Pl's Resp. (ECF No. 34) at 5-6.) Plaintiff filed a grievance on June 1, 2015, complaining that he had not been seen by defendant for a follow-up appointment. (DSUF (ECF No. 32-2) ¶ 9; Pl's Resp. (ECF No. 34) at 6.) On June 4, 2015, defendant reviewed plaintiff's request to renew his Tylenol #3 prescription and declined to renew the medication. (DSUF (ECF No. 32-2) ¶ 9; Pl's Resp. (ECF No. 34) at 6.) Plaintiff met with defendant on June 25, 2015, and as a result of the meeting, defendant referred plaintiff for x-rays and to see a specialist. (DSUF (ECF No. 32-2) ¶ 3; Pl's Resp. (ECF No. 34) at 1-3.)

## II.  Disputed Facts

The parties dispute the adequacy of defendant's response to plaintiff's requests for pain medication and for a follow-up appointment, the nature of the June 25, 2015 meeting, and when defendant found out plaintiff filed a grievance regarding defendant's failure to see him for a follow-up appointment.

Defendant claims he had no control over scheduling appointments and any delay in treatment was due to scheduling issues. (DSUF (ECF No. 32-2) ¶¶ 5, 6, 7.) Plaintiff contends defendant could have overridden the scheduler by issuing plaintiff a ducat or having plaintiff paged directly. (Pl's Resp. (ECF No. 34) at 3-4.) Defendant characterizes the June 25, 2015 meeting as a medical appointment. (DSUF (ECF No. 32-2) ¶11.) However, plaintiff characterizes it as an interview regarding his June 1, 2015 grievance and claims he was not treated until he began receiving physical therapy in September 2015. (Pl's Resp. (ECF No. 34) at 1-2.) Defendant maintains he was not aware plaintiff filed a grievance regarding his request for a follow-up appointment when he reviewed plaintiff's request to renew his Tylenol #3 prescription. (DSUF (ECF No. 32-2) ¶ 9.) Plaintiff claims defendant must have been aware of the grievance when he reviewed the request. (Pl's Resp. (ECF No. 34) at 6-7.)

11

# ANALYSIS

## I. Deliberate Indifference

Defendant argues he did not cause the delay in treatment and the delay did not cause plaintiff substantial harm. Plaintiff responds that defendant could have done more to ensure plaintiff was seen and treated and that he remained in debilitating pain because of the delay.

The Ninth Circuit has recognized that a purposeful failure to respond to an inmate's pain can amount to an Eighth Amendment violation. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff produced numerous health care request forms notifying prison officials he was in severe pain for weeks after his fall. (ECF No. 18 at 15-16, 20-21, 23, 26-27, 30-32, 34, 36-37, 40-42, 45-47, 49-51, 54-57, 59-65, 68-75, 78-79, 81-83, 101.) Defendant has not claimed he was unaware of plaintiff's requests for a medical appointment. Even if defendant was unaware of plaintiff's attempts to get a follow-up appointment, he was aware plaintiff claimed he was in severe pain because he reviewed plaintiff's requests for renewal of his Tylenol #3 prescription.

Taking the evidence in the light most favorable to the plaintiff, as required at the summary judgment stage, defendant has failed to show there is no dispute regarding any material fact. Plaintiff has produced sufficient evidence to support an inference that defendant was aware plaintiff was in severe pain and failed to respond. Defendant states he had no control over the scheduling of appointments; however, plaintiff alleges defendant could have issued a ducat bypassing the scheduler and ensuring plaintiff received a follow-up appointment. By alleging there was some action defendant could have taken and did not, plaintiff has established a dispute regarding the adequacy of defendant's response to plaintiff's complaints of severe pain. See McGuckin, 974 F.2d at 1060 (stating that deliberate indifference may be established if a defendant "purposefully ignore[s] or fail[s] to respond to a prisoner's pain or possible medical need"). Accordingly, the court will recommend denial of defendant's motion for summary judgment on plaintiff's deliberate indifference claim.

## II. Retaliation

Plaintiff argues defendant retaliated against him by cutting off his pain medication shortly after plaintiff filed a grievance complaining about defendant's refusal to see him for a follow-up

appointment. Defendant argues he was not aware of the grievance when he made the decision not to renew the medication and that his decision not to renew the prescription was based on his medical opinion that the side effects associated with long term use outweighed any benefit.

In order to show that defendant's adverse action was "because of" plaintiff's protected conduct, plaintiff must first show that defendant was aware of plaintiff's protected conduct. Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009). Here, defendant has stated he was unaware that plaintiff named him in a grievance when he made the decision not to renew plaintiff's prescription. In his opposition, plaintiff argues that defendant must have known about the grievance because once a grievance is processed the parties begin preparing for the hearing. (ECF No. 34 at 7.) However, plaintiff's speculation that defendant must have known about the grievance is not sufficient to create a material issue of fact sufficient to deny the motion for summary judgment. See Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."); Nelson v. Pima Cmty. College, 83 F.3d 1075, 1081-82 (1996) (citation omitted) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

The court will grant defendant's motion for summary judgment on plaintiff's retaliation claim because plaintiff has failed to show there is a genuine issue of material fact regarding defendant's knowledge of plaintiff's protected conduct. See Halloum v. Ryan, No. CV 11—0097 PHX RCB, 2014 WL 1047144 at *7 (D. Ariz. Mar. 18, 2014) (granting summary judgment where plaintiff submitted no probative evidence that defendant was aware of plaintiff's protected conduct). Because there is no genuine issue of fact on this element of the retaliation claim, the court need not analyze the remaining elements of the claim. Id.

Further, defendant argues he made the decision to deny the renewal request based on his medical opinion that the side effects associated with long term use of Tylenol #3 outweighed any benefit of plaintiff continuing on the medication. Thus, he has shown there was a legitimate non-retaliatory motive for his action. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (The defendant may prevail if he shows that he would have reached the same

////

1 | decision absent the protected conduct.).  Accordingly, the court will recommend a grant of
2 | defendant's motion for summary judgment on plaintiff's retaliation claim.

### III. Analysis of Qualified Immunity

Defendant argues he is entitled to qualified immunity because his actions were objectively reasonable under the circumstances.

It was clearly established in 2015 that a prison official could be deliberately indifferent to an inmate's pain in violation of the Eighth Amendment by failing to respond appropriately to an injury.  The facts are disputed about whether defendant responded adequately to plaintiff's pain and requests for an appointment with his PCP.  Defendant has not met his burden of demonstrating the absence of a genuine issue of material fact with respect to the reasonableness of his actions in response to plaintiff's complaints of pain and requests to see his doctor.  These factual issues are sufficient to defeat summary judgment on the grounds of qualified immunity. See Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (if there is a genuine dispute as to the facts and circumstances within a prison official's knowledge, or what the prison official "did or failed to do," summary judgment on qualified immunity is not appropriate).

### PLAINTIFF'S REQUEST TO ADD A DEFENDANT

To the extent that plaintiff argues for the first time in his opposition to defendant's motion for summary judgment that he would like to bring a claim against the MCSP scheduler for deliberate indifference, he is advised that the opposition to a motion for summary judgment is not a proper vehicle for adding new claims to his complaint.  Further, plaintiff may not amend his complaint at the summary judgment stage of these proceedings.  See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314-15 (11th Cir. 2004).  Accordingly, the court will recommend denial of plaintiff's request to add the unidentified scheduler as a defendant in this matter.

////
////
////

**CONCLUSION**

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 32) be granted in part and denied in part as follows:

   a. Defendant's motion on plaintiff's Eighth Amendment deliberate indifference claim be denied;

   b. Defendant's motion on plaintiff's First Amendment claim be granted; and

2. c. Defendant's motion for summary judgment with respect to the defense of qualified immunity be denied. Plaintiff's request to add the unidentified MCSP scheduler as a defendant in this matter be denied; and

3. The case shall proceed solely on plaintiff's Eighth Amendment deliberate indifference claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 7, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB12
DLB1/Orders/Prisoner-civil rights/terh1738.msj